# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-4003

_____

| | | |
|---|---|---|
| Sharon Jordan, as next friend of | * | |
| Kayla Johnson, a minor, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas |
| Mark Taylor, | * | |
| | * | [TO BE PUBLISHED] |
| Appellee. | * | |

_____

Submitted:   June 28, 2002

Filed:   November 19, 2002

_____

Before McMILLIAN, JOHN R. GIBSON and LOKEN, Circuit Judges.

_____

PER CURIAM.

Sharon Jordan, as next friend of her eight-year-old granddaughter, Kayla Johnson, appeals from a final order entered in the United States District Court[1] for the Eastern District of Arkansas granting summary judgment in favor of Mark Taylor, a prison security guard at the Pine Bluff Unit ("PBU") of the Arkansas Department of Corrections ("ADC"), on her Fourth Amendment claim alleging that Taylor subjected

_____

[1]The Honorable Susan Webber Wright, Chief United States District Judge for the Eastern District of Arkansas.

Johnson to a partial strip search without reasonable suspicion. Jordan v. Taylor, No. 4:01cv00158 (E.D. Ark. Nov. 14, 2001) (hereinafter "slip op."). For reversal, Jordan argues that the district court erred in holding that (1) the record establishes beyond genuine dispute that Johnson was not subjected to a search within the meaning of the Fourth Amendment and (2) even if a Fourth Amendment search occurred, Taylor is entitled to qualified immunity as a matter of law. For the reasons stated below, we affirm.

The underlying facts are fully stated in the district court's order. See slip op. at 1-4. For our purposes, it is sufficient to state the following. On July 23, 2000, Jordan and Johnson arrived at the PBU to visit inmate Keith Myers, who is Johnson's uncle and Jordan's son. All visitors must go through a metal detector before entering the PBU visiting area. Johnson was unable to pass through the metal detector without setting it off. All concerned agreed that the metal detector was probably being triggered by the buttons on Johnson's overalls. Taylor made it clear to Jordan that Johnson would not be allowed into the visiting area unless she cleared the metal detector. Taylor further stated that Jordan and Johnson could go into the bathroom, remove Johnson's overalls, cover her up with Jordan's jacket, and then try again. Jordan claims that Taylor "ordered" that this be done and further ordered a female security guard, Margie Hobbs, to escort them into the bathroom and observe Johnson being undressed. Jordan admitted in her deposition, however, that she understood that she and Johnson had the option of leaving. See id. at 3 n.3. Jordan took Johnson into the bathroom, with Hobbs present, and removed Johnson's overalls. At Hobbs's suggestion, Jordan also removed Johnson's shirt. Jordan then covered Johnson with her jacket, which came down below Johnson's knees. Afterward, Johnson cleared the metal detector wearing her underwear, socks, and Jordan's jacket. Johnson was allowed to return to the bathroom with just Jordan and put her overalls and shirt back on. Johnson and Jordan then visited Myers.

It is an undisputed fact that every person wishing to visit an inmate at the PBU must clear the metal detector before entering the visiting area. Jordan does not challenge the reasonableness or constitutionality of that penological security regulation. She also does not allege that she and Johnson had a constitutional right to visit Myers.

In the present case, because all concerned assumed that the buttons on Johnson's overalls were setting off the metal detector, Taylor indicated to Jordan that Johnson could try passing through the metal detector wearing Jordan's jacket instead of the overalls. While Jordan maintains that Taylor ordered the removal of Johnson's overalls in the bathroom in front of Hobbs, it is undisputed that Jordan and Johnson could simply have left at any time. Jordan concedes that Taylor said: "that's the only way she [Johnson] can get through." See id.; Brief for Appellant at 4. At no time did Taylor or Hobbs coerce them into staying or restrain their liberty. "Encounters between [law enforcement] officers and individuals that are consensual in nature and do not involve coercion or restraint of liberty will not implicate the Fourth Amendment." United States v. Dennis, 933 F.2d 671, 673 (8th Cir. 1991) (per curiam) (citing United States v. Poitier, 818 F.2d 679, 682 (8th Cir. 1987), cert. denied, 484 U.S. 1006 (1988)). Upon *de novo* review, we hold in the present case that no search occurred within the meaning of the Fourth Amendment. Having so concluded, we need not reach the issue of qualified immunity.

The order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.